USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PLAYBOY ENTERPRISES INTERNATIONAL, INC.,

Plaintiff,

-against-

HAYMARKET MEDIA, INC.,

Defendant.

1:25-cv-6451-MKV

ORDER DENYING MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Playboy Enterprises International, Inc. ("Plaintiff" or "Playboy") initiated this copyright infringement action against Defendant Haymarket Media, Inc. ("Defendant" or "Haymarket") by filing a complaint. [ECF No. 1]. Thereafter, Haymarket requested a pre-motion conference on an anticipated motion to dismiss. [ECF No. 13]. The Court afforded Playboy one "last opportunity to amend the complaint in response to arguments raised in the Defendant's letter." [ECF No. 15] at 1. Playboy filed an amended complaint. [ECF No. 17] (the "First Amended Complaint" or "FAC").

Haymarket moved to dismiss, [ECF No. 18] (the "Motion"), attaching a memorandum in support, [ECF No. 18-1] (the "Memorandum" or "Mem.), a full copy of the article that is the subject of this lawsuit, [ECF No. 18-2], a copy of the cover and table of contents of the *Playboy* issue that is the subject of that article, [ECF No. 18-3], and a proposed order granting the Motion, [ECF No. 18-4]. Playboy opposed. [ECF No. 19] (the "Opposition" or "Opp."). Haymarket replied. [ECF No. 20] (the "Reply").

The Motion is fully briefed.

**BACKGROUND**

Playboy is a media and lifestyle company that publishes, *inter alia*, photographs of celebrities and models. FAC ¶ 7. It has amassed a catalogue of such images that it licenses for fees. *Id.* One such image, to which Plaintiff owns the copyright, is of a woman named Elizabeth Elam (the "Copyrighted Work"). *Id.* ¶ 8.

Haymarket is a publisher of online media, including written articles. *Id.* ¶¶ 17, 18. Defendant Haymarket used the Copyrighted Work in connection with an article published in 2017 about Playboy's editorial decision to reintroduce nudity into its publications. *Id.* ¶¶ 18–19. The Copyrighted Work appears just above a paywall offering subscription options. *Id.* ¶¶ 19, 21. The body of the article is not visible behind the paywall. *Id.*

The core of Playboy's infringement allegations reads as follows:

> Upon information and belief, Defendant needed photographic content from Plaintiff as illustration for an article about Plaintiff. Defendant could have inquired about a possible license for use of the Copyright Work at Defendant's website. Defendant did not. Instead, Defendant, or someone acting on its behalf, searched the internet and located the Copyright Work and, without authorization from Plaintiff, downloaded the Copyright Work to computer systems owned or operated by Defendant, and then used the Copyright Work in the creation of the webpage depicted above, thus unlawfully committing a number of infringing acts, namely, reproducing, distributing, creating unlawful derivative works, and publicly displaying the Copyright Work.

*Id.* ¶ 14.

On this basis, Playboy asserts one claim for direct copyright infringement under the Copyright Act, Title 17, United States Code, Chapter 5. FAC ¶¶ 33–43. Haymarket's motion to dismiss is based entirely on the affirmative defense of fair use under Title 17, United States Code, Section 107. *See generally* MTD.

## STANDARD

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all factual allegations in the First Amended Complaint and must draw all inferences in Plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

"A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citation modified). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation modified). Finally, "courts considering a motion to dismiss may take judicial notice of the fact that press coverage contained certain information so long as they do not rely on the truth of that information." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 (2d Cir. 2013) (citation modified).[1]

## ANALYSIS

Defendant does not dispute that Plaintiff has plausibly alleged infringement of Plaintiff's Copyrighted Work. Instead, it argues that "Plaintiff has failed to state a claim for copyright infringement because Haymarket's use of a portion of the subject photograph . . . was a fair use." MTD at 11. "The Supreme Court has clarified that fair use is an affirmative defense to a claim of

[1] Under these standards, the Court may take judicial notice of the exhibits attached to Haymarket's Motion. *See* [ECF No. 18-2] (full copy of the article that is the subject of this lawsuit); [ECF No. 18-3] (copy of the cover and table of contents of the *Playboy* issue that is the subject of that article).

copyright infringement, the proponent of which bears the burden of justifying its taking." *Romanova v. Amilus Inc*, 138 F.4th 104, 110 (2d Cir. 2025) (citing *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 547 n.21 (2023) ("Fair use is an affirmative defense, and [the proponent] bears the burden to justify its taking of [the copyright-holder's] work with some reason other than, 'I can make it better.'" (citation modified)).

Section 107 of the Copyright Act provides:

> the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> > (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> >
> > (2) the nature of the copyrighted work;
> >
> > (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> >
> > (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107. "While courts typically discuss each factor individually," in assessing a fair-use defense, "the factors must 'all be explored, and the results weighed together, in light of the purposes of copyright.'" *Richardson v. Townsquare Media, Inc.*, 174 F.4th 299, 306 (2d Cir. 2026) (citation modified, quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994))).

The Second Circuit has acknowledged "the possibility of fair use being so clearly established by a complaint as to support dismissal of a copyright infringement claim." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016). But, for that to be the case, "the fair-use factors must point decisively in the defense's favor." *Richardson*, 174 F.4th at 306.

Conversely, "for the complaint to survive dismissal, we need not conclude that the fair-use factors require a rejection of the fair-use defense; it is sufficient that the plaintiff's infringement claim remains plausible after those factors are weighed based on the limited materials we can consider at the pleading stage." *Id.* (citation modified).

Defendant has come nowhere near shouldering its burden under the applicable factors to warrant dismissal of Plaintiff's copyright claim based on a fair-use defense at this stage.

## I. <u>The Purpose and Character of the Use</u>

Textually, the first fair-use factor requires consideration of "the purpose and character of" the would-be infringing "use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). More broadly, the Court is to ask "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative." *Campbell*, 510 U.S. at 579 (citation modified).

Accordingly, the Court addresses both transformativeness and the more specific question of whether Defendant's use was commercial in nature.

### a. Transformativeness

Whether a work is transformative turns on two interdependent considerations. First, "a use may be transformative where it was made for and objectively realizes a purpose distinct from that of the original work." *Richardson*, 174 F.4th at 306. Second, to be transformative, "that new purpose must supply a sufficient 'justification for copying,' such as providing a 'critique or commentary on the original' or supplying 'information to the public about the copied work' that is not otherwise available." *Id.* at 306–07 (quoting *Romanova*, 138 F.4th at 115).

Defendant argues that its use of the Copyrighted Work was transformative because the article in connection with which it was used "offers editorial commentary and analysis of the change in the content strategy in the upcoming *Playboy* edition, specifically questioning whether the magazine will benefit from reintroducing nude photography." MTD at 12. "The article simply used a portion of the photograph of Ms. Elam to report on a story about the upcoming issue of *Playboy Magazine* featuring nude photographs of her." *Id.* at 13. According to Defendant, this means that it "was not offering the photograph of Ms. Elam for the same purpose as Playboy's photographs of female models." *Id.* at 12.

The relationship of this argument to governing law is, at best, specious. The Court does not need to wade into the Parties' disputes over each and every case, *see* Reply at 8–12 (distinguishing cases cited by Plaintiff), to reach this conclusion. Instead, it is all but compelled by the reasoning on display in the Second Circuit's recent decisions in *Romanova*, 138 F.4th 104, and *Richardson*, 174 F.4th 299.

In *Romanova*, the defendant republished in an article on its website the plaintiff's photograph of a woman wrapped in her pet snakes. *See* 138 F.4th at 107–08. The district court found a transformative purpose in this use because the article "communicated the fact that there was a growing trend on the internet to publish pet photos—a message not communicated by the original image." *Id.* at 118. But, as the Second Circuit pointed out in reversing the district court's fair-use analysis, "the test turns on whether *the copying of the original* communicates a message that differs from the message of the original—not whether the copier separately declares such a message." *Id.* at 118–19 (emphasis original). In *Romanova*, nothing about the act of republication itself communicated anything not already communicated by the original; the only new expression was in the text of the defendant's article.

Put in terms of the second transformativeness consideration, there was no good reason—no "justification"—for defendant's copying. 138 F.4th at 119. It was not necessary to republish plaintiff's photograph in order to "comment on" it. *Id.* Nor could anyone seriously have purported that the copying served "the public" in some loftier sense, let alone in a manner that was unlikely to "substitute for the original in the marketplace." *Id.* at 115.

In *Richardson*, a somewhat closer case, the defendant published an article on its website that embedded an X post that in turn embedded a video recorded by the plaintiff of an altercation involving a celebrity. 174 F.4th at 304. The district court ruled that the defendant's use was transformative because "the video was itself the subject" of the defendant's article, which embedded the video in order to "add[] new information and context." *Id.* at 307 (citation modified).[2] The Second Circuit was dubious. *Id.* In its view, any such additive commentary was thin and only marginally grounded in the embedded video itself. *Id.* One could just as easily have read the article as "merely summariz[ing] commentary about the fight depicted" in the video "and rel[ying] on the video solely as an illustrative aid." *Id.* The Second Circuit ultimately did "not reach any definitive conclusion as to the precise degree of the article's transformativeness," because the "other factors . . . would strongly outweigh" any "transformative value" in any event. *Id.* at 308. Nevertheless, this reasoning provides a helpful gloss on *Romanova*.

---

[2] This issue is likewise the principal faultline in the arguments on transformativeness before the Court here. *See, e.g.*. Opp. at 18 ("Here the 'news' is not the photograph; the 'news' is, Defendant concedes, a change in the nudity policy at Playboy Magazine in 2017."); Reply at 8–9 ("The cases Playboy cites either directly support Haymarket or are readily distinguishable because the defendant simply used the original work for the same purpose as the original publication without adding anything new or a different meaning (or the work was unpublished or private and obtained improperly)."). "For example, a news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about," or a "depiction of a controversial photograph could be fair use as accompaniment to commentary about the controversy or criticism of the photograph." *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 543 (S.D.N.Y. 2019) (citation modified, collecting cases); *see also Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22 (1st Cir. 2000) (agreeing with the lower court that "the pictures were shown not just to titillate, but also to inform," a function that "would have been much more difficult" to carry out without showing the controversial pictures, because, in essence, they "were the story"). This case, as discussed below, is not like those cases.

Defendant's alleged infringement here utterly lacks distinctive purpose or sufficient justification. Its use of the Copyrighted Work as the banner image for its article on *Playboy*'s "return to nudity" adds absolutely nothing to the original image. Not only does Plaintiff's copying not say anything new about the original image, its article does not even "separately declare[]" such a message. *See Romanova*, 138 F.4th at 119.

Indeed, the article says nothing about the image whatsoever. It does not even make the tenuous connection that Defendant now makes in its motion to dismiss by pointing out that "the photograph used in the article was not a photograph of a random model, but rather, Elziabeth Elam, the model featured on the cover of the March/April 2017 issue of Playboy, titled *Naked is Normal*." MTD at 13. One can only conclude that "the article[] included the [photograph] for the same reason" Playboy commissioned it. *Lynk Media, LLC v. Indep. Digital News & Media, LLC*, No. 24 CIV. 583 (JPC), 2025 WL 2771625, at *16 (S.D.N.Y. Sept. 29, 2025), *reconsideration denied*, No. 24 CIV. 583 (JPC), 2025 WL 3204302 (S.D.N.Y. Nov. 17, 2025).

Nor is this a case where copying and republishing the Copyrighted Work could even conceivably be said to have "provided information to the public about the copied work, or enabled the furnishing of valuable information on any subject of public interest, or rendered a valuable service to the public." *Romanova*, 138 F.4th at 115. Even assuming Defendant's article had remarked upon the Copyrighted Work in any way, rather than merely using it as an unattributed banner, "courts in this Circuit roundly agree that simply reporting on the contents of visual media is an insufficient justification for copying that media." *Lynk*, 2025 WL 2771625, at *17 (collecting cases).

**b. Commercial Motive**

Defendant concedes that it is a for-profit enterprise but argues that "this is true of virtually every news publication." MTD at 14 (collecting cases). Nevertheless, this "fact . . . weighs against fair use." *Richardson*, 174 F.4th at 308. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Conceivably, "it might prove to be misleading to characterize" Defendant's use of the Copyrighted Work "as commercial exploitation," *Richardson*, 174 F.4th at 308—for example, if it turns out that the "the link between . . . [D]efendant's commercial gain and its copying is attenuated," *Swatch Group Management Services Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 83 (2d Cir. 2014) (citation modified).

In any event, the Court need not undertake an extensive, factually contested analysis comparing the paywall in this case, *compare* FAC ¶¶ 19, 21 *with* Reply at 5 (calling it "misleading[]" to say "that the article is now behind a paywall"), with the advertisements in *Richardson*, *see* 174 F.4th at 308 (noting that, while defendant "ran advertising alongside its" reproduction of the at-issue video, "classic legacy news media such as newspapers, news magazines, and commercial television stations did, and do, the same"). It is enough to observe that, on the facts alleged, "this sub-factor cannot count in [Defendant's] favor" "at the pleading stage." *Richardson*, 174 F.4th at 308.

"Not only did the Defendant copier flunk the tests of transformativeness of the copying and of need to show justification for the copying, but its copying was done for a commercial purpose, which, while not dispositive, is more helpful to Plaintiff than to Defendant." *Romanova*, 138 F.4th at 120. Accordingly, the first fair-use factor weighs heavily against Defendant.

## II. <u>The Nature of the Copyrighted Work</u>

Under the second fair-use factor, the Court considers the nature of the Copyrighted Work itself. More specifically, the Court asks two questions: First, "whether the work is expressive or creative, such as a work of fiction, or more factual, with a greater leeway being allowed to a claim of fair use where the work is factual or informational"; and second, "whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).

### a. Creativity of the Work

Plaintiff's only attempt to articulate the creative or expressive qualities of the Copyrighted Work is its conclusory statement that the photograph "is an expressive and creative work of art." FAC ¶ 25. "In copyright infringement actions, the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation modified).

Here, even if the Copyrighted Work is not particularly creative or expressive, it exhibits "at least a modicum of artfulness." *Clark v. Transportation Alternatives, Inc.*, No. 18 CIV. 9985 (VM), 2019 WL 1448448, at *4 (S.D.N.Y. Mar. 18, 2019). Nor, inversely, could it fairly be described as "factual or informational." *Koons*, 467 F.3d at 251. Nevertheless, this "factor has rarely played a significant role in the determination of a fair use dispute." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015).[3]

---

[3] Instead, this sub-factor seems to take on much of its significance in connection with the transformativeness analysis. *See id.* ("One cannot assess whether the copying work has an objective that differs from the original without considering both works, and their respective objectives."). Because it is so obvious that Defendant's copying involved no "new expression," *Campbell*, 510 U.S. at 579, *see supra* Section I.a., the Court need not dwell on the question of the Copyrighted Work's expressive qualities. *Cf. Authors Guild*, 804 F.3d at 220; *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006) (distinguishing *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70 (2d Cir. 1997)); *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 144 (2d Cir. 1998).

**b. Publication Status**

Plaintiff concedes that the Copyrighted Work had already been published at the time of Defendant's alleged infringement, but argues that "the fact that a work is published does not mean that the scope of fair use is *per se* broader." Opp. at 21 (quoting *Grant v. Trump*, 563 F. Supp. 3d 278, 288 (S.D.N.Y. 2021) (quoting *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 456 (9th Cir. 2020) (quoting 4 William F. Patry, *Patry on Copyright* § 10:139.30 (2020)), *cert. denied sub nom. ComicMix, LLC v. Dr. Seuss Enters., L.P.*, 141 S. Ct. 2803, 210 L. Ed. 2d 933 (2021) (mem.). This may be true, but "the second sub-factor" still "counts in Defendant's favor." *Yang*, 405 F. Supp. 3d at 546.

At minimum, it would seem appropriate to "limit[] the weight" of the Copyrighted Work's creative or expressive qualities in light of its publication status. *Bill Graham Archives*, 448 F.3d at 612. That weight, however, was negligible to begin with. In short, this factor is neutral. "Nothing in this case influences [the Court] one way or the other with respect to the second factor considered in isolation." *Authors Guild*, 804 F.3d at 220.

**III. <u>The Amount and Proportion Used</u>**

The question under the third fair-use factor is whether the "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (citation modified). In other words, the Court asks whether Defendant took only those portions of the Copyrighted Work that were "necessary . . . in order to achieve a legitimate, transformative secondary purpose." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 188 (2d Cir. 2024). Because no such purpose was served by Defendant's copying, *see supra* Section I.a., the Court need not referee the argument about whether or not the cropped image of Ms. Elam used by

Defendant was "essentially the heart of the Copyrighted Work." Opp. at 21 (quoting *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480 (2d Cir. 2004) (citation modified)).

This factor weighs against Defendant. *Castle Rock*, 150 F.3d at 144 (hypothetical argument concerning quantity and value of material copied "would not disturb [the Second Circuit's] conclusion that, under any fair reading, [the infringing work] does not serve a critical or otherwise transformative purpose," such that "the third factor weighs against fair use.").

## IV. <u>Effect on Market for Copyrighted Work</u>

The fourth fair-use factor is "undoubtedly the single most important element of fair use." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (quoting *Harper & Row*, 471 U.S. at 566); *but see American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 926 (2d Cir. 1994) ("Apparently abandoning the idea that any factor enjoys primacy, *Campbell* instructs that 'all four factors are to be explored, and the results weighed together, in light of the purposes of copyright.'" (citation modified, quoting *Campbell*, 510 U.S. at 578)).

Here, the Court evaluates "whether the secondary use usurps demand for the protected work by serving as a market substitute." *TCA*, 839 F.3d at 186. More broadly, the Court asks "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (citation modified). As with virtually all the other factors, this one is "necessarily intertwined with factor one." *ReDigi Inc.*, 910 F.3d at 662 (citation modified); *see also Romanova*, 138 F.4th at 117 n.9 ("The question whether an act of copying can be justified as a fair use cannot be satisfactorily answered without considering not only the service that the copying renders but also

the likelihood that the copy will supersede or supplant the original, serving as a market substitute for the protected expression of the original." (citation modified)).[4]

Plaintiff's principal argument under this factor is that Haymarket's "reproduction of a portion of one photograph of a single Playboy model as part of a sober-minded business news article simply cannot be deemed a substitute for glossy, full spread nude magazine display." Reply at 11 (citing *Nunez*, 235 F.3d at 25). Maybe that is true, but the Copyrighted Work is not a "full spread nude magazine display." It is a single photograph of a model who is clothed (albeit scantily).

Moreover, it is one for the use of which Plaintiff collects licensing fees. FAC ¶¶ 14, 27. Of course, "a copyright owner has no right to demand that users take a license unless the use that would be made is one that would otherwise infringe an exclusive right." *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 180 (2d Cir. 2018). "To avoid [the] danger of circularity," then, the Second Circuit has "limited [its] consideration of lost licensing revenue under the fourth fair-use factor to include only 'traditional, reasonable, or likely to be developed markets,'" *Richardson*, 174 F.4th at 311 n.6 (citation modified, quoting *American Geophysical*, 60 F.3d at 929–30)), rather than focusing on "possible lost licensing fees from defendants' challenged use" itself. *TCA*, 839 F.3d at 186. "Where a secondary use is transformative, the use is unlikely to fall into a traditional or likely to be developed licensing market." *Richardson*, 174 F.4th at 311 n.6 (citation modified)).

This is not such a case. There is nothing speculative about a market in licenses for use of Plaintiff's copyrighted photographs. *See* FAC ¶ 7 ("Since its launch, Plaintiff has amassed an unparalleled catalogue of iconic imagery that it strategically licenses."). Moreover, Defendant's

[4] The Court acknowledges that "transformative use is not absolutely necessary for a finding of fair use." *Swatch*, 756 F.3d at 84 (quoting *Campbell*, 510 U.S. at 579 (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 n.40 (1984))).

copying has added nothing to the photograph in question, *see supra* Section I.a., while plausibly causing market harm to Plaintiff, *see* FAC ¶ 27.

"Accepting [Plaintiff's] allegations as true at this stage of the litigation, [the Court] conclude[s] that this factor weighs in favor of [Plaintiff]." *TCA*, 839 F.3d at 186–87.

### V. **<u>Weighing the Factors</u>**

"The final step is to weigh the four statutory factors together . . . in light of the purposes of copyright." *Tveyes*, Inc., 883 F.3d at 180 (citation modified, quoting *Campbell*, 510 U.S. at 577–78)). "The ultimate goal of copyright is to expand public knowledge and understanding" by incentivizing the creation of "informative, intellectually enriching works for public consumption." *Authors Guild*, 804 F.3d at 212. As reflected in the Court's analysis of the fair-use factors—all of which weigh in Plaintiff's favor, except for the second, which is neutral—Defendant's reproduction of the Copyrighted Work does not serve this purpose.

## CONCLUSION

For the foregoing reasons, the Court cannot accept at this stage of the litigation Defendant's assertion of the fair-use defense as sufficient to defeat as a matter of law Plaintiff's well-pled claim of copyright infringement. Accordingly, the Motion is DENIED. Within thirty days, Defendant shall file its answer to the First Amended Complaint.

**SO ORDERED.**

**Dated: September 28, 2026**
**New York, New York**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**